E-FILED
Friday, 25 November, 2022  10:49:10 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| ROBERT HERCMANAS, KACEY HANSON )<br><br>)<br>    Plaintiff,        )<br>)<br>VS.                      )<br>)<br>JAY R PRITZKER, in his official capacity as )<br>GOVERNOR OF THE STATE OF ILLINOIS, )<br>ILLINOIS DEPARTMENT OF CORRECTIONS, )<br>ILLINOIS DEPARTMENT OF HUMAN )<br>SERVICES, ILLINOIS DEPARTMENT OF )<br>CENTRAL MANAGEMENT SERVICES, )<br>ERIN O'BOYLE, in her official capacity as the )<br>DEPUTY DIRECTOR OF LABOR )<br>RELATIONS FOR CMS, )<br>SARAH KERLEY, in her official capacity as the )<br>CHIEF ADMINISTRATIVE OFFICER OF CMS, )<br>CHARLES TRUITT, in his official capacity as )<br>WARDEN OF STATEVILLE CORRECTIONAL )<br>CENTER, TERESA SMITH, in )<br>her official capacity as ADMINISTRATOR OF )<br>CHOATE MENTAL HEALTH AND )<br>DEVELOPMENTAL CENTER )<br>    Defendants.         ) | Case No. _____ |

**VERIFIED COMPLAINT**
**FOR DECLARATORY RELIEF AND DAMAGES**

COME NOW Plaintiffs, ROBERT HERCMANAS and KACEY HANSON, by and

through their attorney, Bethany D. Hager, pursuant to Fed. Rule Civ. Proc. 81(c)(1) and Fed. Rule

Civ. Proc. 15(a)(1), (2), and for their Verified Complaint for Declaratory Relief, and Damages

against Defendants, JAY R PRITZKER, in his official capacity as GOVERNOR OF THE STATE

OF ILLINOIS ("Pritzker"), ILLINOIS DEPARTMENT OF CORRECTIONS ("IDOC"),

ILLINOIS DEPARTMENT OF HUMAN SERVICES ("IDHS"), ILLINOIS DEPARTMENT OF

CENTRAL MANAGEMENT SERVICES ("CMS"), ERIN O'BOYLE in her official capacity as

the DEPUTY DIRECTOR OF LABOR RELATIONS FOR CMS, SARAH KERLEY in her official capacity as CHIEF ADMINISTRATOR FOR CMS, CHARLES TRUITT, in his official capacity as WARDEN OF STATEVILLE CORRECTIONAL CENTER, and TERESA SMITH, in her official capacity as ADMINISTRATOR OF CHOATE MENTAL HEALTH AND DEVELOPMENTAL CENTER, allege as follows:

## PARTIES

1.    Plaintiffs are adult individuals employed by one or more of the Defendants in congregate care facilities operated by the state government of Illinois.

2.    Defendants IDOC, IDHS and CMS are executive branch agencies of the State of Illinois.

3.    Defendant, Pritzker, is the current Governor of the State of Illinois.

4.    Defendant, O'Boyle is the current Deputy Director of Labor Relations for Defendant CMS.

5.    Defendant, Kerley, is the current Chief Administrative Officer for Defendant CMS.

6.    Defendant, Truitt, is the current Warden of Stateville Correctional Center.

7.    Defendant, Smith, is the current Administrator of Choate Mental Health and Developmental Center.

8.    Plaintiffs have sustained substantial change to the terms of their respective employment, including prolonged unpaid suspension and termination of employment, solely due to not agreeing to be vaccinated for COVID-19 or submitting to COVID-19 testing.

## FACTUAL BASIS

9.      On or about September 3, 2021, Defendant Pritzker issued an Executive Order stating that individuals employed in state-owned and/or operated congregate care facilities would be required to receive the first shot of a two-shot vaccine for Covid-19, or one shot of a one-shot vaccine for Covid-19, by September 27, 2021, or be excluded from their places of employment. (See Exhibit A)

10.     On or about September 17, 2021, the Illinois Department of Public Health ("IDPH") issued "emergency rules," modifying the definition of "quarantine" in the Illinois Administrative Code so as to render the governor's Executive Order legally effective.

11.     The emergency rules were later found to be null and void. *See*, *Austin v. Pritzker*, Sangamon County 21-CH-500006, February 4, 2022 Decision and Order of Judge Grischow, *affirmed*, Fourth District Appellate Court No. 4-22- (February 17, 2022), *lv to appeal denied*, Illinois Supreme Court No. 128205. (See, collectively, Exhibit C)

12.     On or about September 16, 2021, Defendant CMS notified Plaintiff that Defendants were implementing a mandatory Covid-19 vaccination policy (the "Policy") by which employees whose positions require them to work in congregate care facilities operated by IDOC, IDVA, IDHS, and other state agencies would be required to receive the first shot of a two-shot vaccine or one shot of a one-shot vaccine by October 14, 2021. (See Exhibit B)

13.     The Policy was later updated to state that employees would be required to receive the first shot of a two-shot vaccine or one shot of a one-shot vaccine by October 26, 2021. (See Exhibit D)

14.     The Policy stated that affected employees who refuse to receive a Covid-19 vaccination and fail to submit proof of vaccination, or who fail to submit a completed exemption

form by the timeframes outlined in the Policy, shall be subject to progressive discipline up to and including suspension and discharge. (See Exhibit B)

15.     Employees who refused to receive a Covid-19 vaccination for any reason, began facing progressive discipline beginning as early as November 9, 2021.

16.     Plaintiffs sought exemption from the Policy due to their sincerely held religious beliefs, but their exemption requests were denied.

17.     Representatives from the Illinois Department of Corrections have asserted on record in other judicial proceedings that Defendant CMS never intended to approve any exemption from the Policy to honor sincerely held religious beliefs of employees such as the Plaintiffs.

18.     Indeed, while the Policy states that affected employees may be exempted from the Covid-19 vaccination policy if they present documentation of a medical contraindication for receiving the vaccine, or maintain sincerely held religious beliefs, practices or observances that prohibit vaccination, in practice Defendants have made obtaining an exemption for reasons of sincerely held religious beliefs nearly impossible. Specifically:

19.     The Policy states that employees exempted from the vaccination, even for sincerely held religious beliefs, practices or observances that prohibit vaccination, shall undergo regular Covid testing and ensure that appropriate documentation of the same is regularly submitted. (See Exhibit B)

20.     Defendants have set forth a form for the "Request of Religious Exemption from Covid-19 Vaccination" (the "Form") and stated that Plaintiffs are required to use only this Form to submit their request to be exempted from the Policy for reasons of sincerely held religious beliefs, practices, or observances that prohibit vaccination. (See Exhibit E)

21.     Defendants have failed to follow their own prescribed procedure for accepting or

denying requests for religious exemption from the Policy within ten (10) days. (See Exhibit E)

22.     Employees who have submitted the required CMS religious exemption form have, instead, received an email stating "additional information is needed to process the Religious Exemption Request to CMS" and requesting documented history of religious exemptions to vaccinations, verified religious affiliation with a religious group whose tenants [sic] oppose vaccine or medical procedures; proof or prior conduct with a religious opposition to medicines that used fetal cells in their research, testing, or development, documented history of vaccination and/or refusal." (See Exhibit F)

23.     Defendants have made known their intent to lay-off, reassign, or suspend employees who do not submit to vaccination on or before October 26, 2021. (See Exhibit G, Layoff Discipline Notice; and Exhibit H, FAQs regarding Leave of Absence Discipline)

24.     Defendants have stated that "unvaccinated employees continue to be a substantial burden on the state." (See Exhibit I)

25.     Plaintiffs have been subjected to discipline proceedings, and are currently facing lay-off, suspension without pay, and termination solely because, due to their sincere religious convictions, they did not submit to Covid-19 vaccination and testing.

26.     Regular Covid testing is not required of employees who receive the Covid-19 vaccine.

27.     Plaintiffs, and other employees of the Defendants, were not required to vaccinate for any other infectious disease as a condition of their employment.

28.     The only disease for which Plaintiffs, and other employees of the Defendant, are required to test as a condition of their employment is tuberculosis. See, 77 Ill. Admin. Code 696.130.

29.     At this time, Plaintiffs are not positive for Covid-19 or any other infectious disease, and are not currently exhibiting any symptoms consistent with the Covid-19 virus or any other infectious disease.

30.     Plaintiffs object to being vaccinated or tested for Covid-19 for a variety of reasons based upon their faith as revealed through prayerful discernment.

31.     Plaintiffs have been willing to abide by protections that have been demonstrated to protect against Covid-19, namely, self-monitoring for symptoms, wearing a mask when appropriate, voluntary reporting of potential symptoms, and reasonable testing requirements. These mechanisms provide a sufficient alternative to forced vaccination in violation of sincerely held religious beliefs.

32.     Being vaccinated or asymptomatically tested for Covid-19 violates the moral conscience of Plaintiffs because, *inter alia*, Plaintiffs hold sincere beliefs that prevent them from submitting to health care procedures which they, competent adults, do not believe are medically necessary.

33.     Being vaccinated for Covid-19 violates the moral conscience of Plaintiffs because, *inter alia*, Plaintiffs hold sincere beliefs that prevent them from submitting to health care procedures or vaccines that they reasonably believe have a connection to the use of aborted fetal cell lines either in testing, development, or production.

34.     Requiring only unvaccinated persons to submit to testing for Covid-19 violates the moral conscience of Plaintiffs because, *inter alia*, Plaintiffs hold sincere beliefs that prevent them from submitting to or participating in workplace procedures which arbitrarily discriminate between employees on the basis of health care choices made pursuant to freedom of conscience.

35.     Required testing for Covid-19 on an arbitrary schedule for persons who are non-

symptomatic for Covid-19 is not a reasonable accommodation of Plaintiffs' sincere religious and conscience beliefs against vaccination.

36. Required testing for Covid-19 on an arbitrary schedule for persons who are non-symptomatic for Covid-19 poses health hazards to individuals including Plaintiffs, including but not limited to: nose bleeds, headaches, and allergic reactions to the substances used on the testing swabs.

37. The vaccines and testing mechanisms available to Plaintiffs have only had emergency use authorization for one year.[1]

38. The only currently available COVID-19 vaccine (Janssen/Johnson & Johnson), is authorized for Emergency Use under the Emergency Use Authorization statute. The Emergency Use Authorization statute mandates that all individuals to whom the product may be administered, including the Plaintiffs, be given the right to accept or refuse administration of the product.

39. The recent FDA biologics license application (BLA) approval of the product COMIRNATY, COVID-19 Vaccine, mRNA, manufactured by BioNTech Manufacturing GmbH,[2] does not change the EUA status of the Pfizer-BioNTech COVID-19 Vaccine that has been available under EUA since December 23, 2020.[3] According to the EUA extension letter issued by the FDA to Pfizer on August 23, 2021, the Pfizer-BioNTech COVID-19 Vaccine and BioNTech's COMIRNATY, COVID-19 Vaccine, mRNA "are legally distinct" products.[4]

40. Moreover, the now "approved" COMIRNATY vaccine cannot be distributed for use until BioNTech submits "final container samples of the product in final containers together

---

[1] https://www.dph.illinois.gov/covid19/vaccination-plan
[2] BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA (Aug. 23, 2021), https://www.fda.gov/media/151710/download.
[3] EUA Extension Letter for Pfizer-BioNTech COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/media/150386/download.
[4] *Id*. at 3 n.10 (emphasis added).

with protocols showing results of all applicable tests" and BioNTech receives "a notification of release from the Director, Center for Biologics Evaluation and Research (CBER)."[5] Thus, it is not clear when (or if) any Illinois State employee will have access to the "approved" COMIRNATY vaccine, leaving all employees who may elect to receive the "Pfizer" vaccine pursuant to the mandatory vaccine policy to receive a dose of the current stock of Pfizer-BioNTech vaccine still being administered subject to EUA rules.

41.     On August 23, 2021, the United States Food and Drug Administration issued two separate letters pertaining to two separate COVID-19 vaccines. (See, Exhibit J, BioNTech Letter, United States Food and Drug Administration to BioNTech Manufacturing GmbH (Aug. 23, 2021); Exhibit K Pfizer Letter, United States Food and Drug Administration to Pfizer, Inc. (Aug. 23, 2021).)

42.     In the Pfizer Letter, the FDA confirms that, on December 11, 2020, it granted Emergency Use Authorization for the previous Pfizer-BioNTech COVID-19 Vaccine. (Ex. K, Pfizer Letter at 1.) It also notes that the EUA approval was continued on December 23, 2020, February 25, 2020, May 10, 2021, June 25, 2021, and August 12, 2021. (Pfizer Letter at 1-2.)

43.     The Pfizer Letter also makes clear that there is a scientific, manufacturing, and legally significant difference between the Pfizer-BioNTech COVID-19 Vaccine and the newly approved Comirnaty Vaccine. (Pfizer Letter at 2 n.9.)

44.     Specifically, the FDA stated that although the COMIRNATY COVID-19 Vaccine was granted full approval by the FDA, the Pfizer-BioNTech COVID-19 Vaccine was still only subject to the EUA authorization. (Pfizer Letter at 2 n.9 ("In the August 23, 2021 revision, FDA clarified that, subsequent to the FDA approval of COMIRNATY (COVID19 Vaccine, mRNA) for

---

[5] BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA, supra note 2 at 2.

the prevention of COVID-19 for individuals 16 years of age and older, this EUA would remain in place for the Pfizer-BioNTech COVID-19 vaccine for the previously-authorized indication and uses. It also authorized COMIRNATY (COVID-19 Vaccine, mRNA) under this EUA for certain uses that are not included in the approved biologics license application (BLA)."

45.     Put simply, because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute prohibits Defendants (or any other entity) from making the COVID-19 vaccines mandatory.

46.     All existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine remain under the sole authorization of the EUA. (Pfizer Letter at 2 n.9.)

47.     On information and belief, the existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine register in the millions, and anyone receiving any COVID-19 vaccine for the foreseeable future is guaranteed to receive the EUA-approved Pfizer-BioNTech COVID-19 Vaccine, not the fully approved COMIRNATY.

48.     There are no currently existing doses of COMIRNATY in the United States and it is not being manufactured for production or distribution in the United States at this time.

49.     In fact, the FDA Pfizer Letter plainly indicates that COMIRNATY is not available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older, there is no sufficient approved vaccine for distribution to the population." (Pfizer Letter at 6 n.12 (emphasis added).)

50.     Thus, the only currently available COVID-19 vaccines are subject solely to EUA approval.

51.     The Emergency Use Authorization Fact Sheets for all three COVID-19 vaccines

state that it is the individual's right to refuse administration of the vaccine.

52.     Pfizer has acknowledged over 1200 serious to life-threatening known side effects from its "investigational Covid-19 vaccine."[6]

53.     According to the CDC, the survival rate of all persons who have contracted Covid-19 nation-wide, based on reported numbers, is 98.40%.[7]

54.     The COVID-19 vaccine has resulted in a statistically significant number of serious adverse reactions, including myocarditis, a potentially fatal inflammation of the heart muscles, and pericarditis, a potentially fatal inflammation of the heart tissue. (*See*, Patricia Kime, Dod Confirms: Rare Heat Inflammation Cases Linked to COVID-19 Vaccines, Military.com (June 30, 2021).[8]

55.     According to the CDC, the survival rate of all persons who have contracted Covid-19 nation-wide, when adjusted for unreported cases, is 99.36%.[9]

56.     According to the IDPH, the survival rate of all persons who have contracted Covid-19 in Illinois, based on reported numbers, is 98.46%.[10]

57.     According to the IDPH, the survival rate of all persons who have contracted Covid-19 in Illinois, when adjusted for all unreported Covid cases, is 99.52%.[11]

58.     The suspension without pay, termination, discriminatory treatment, and subjection to a hostile work environment toward Plaintiffs has caused incalculable and irreparable harm to Plaintiffs and their families, namely, jeopardizing Plaintiffs' ability to provide for their families and avoid homelessness, lack of medical care, lack of food and shelter, disrupted education for

---

[6] https://phmpt.org/wp-content/uploads/2021/11/5.3.6-postmarketing-experience.pdf

[7] https://covid.cdc.gov/covid-data-tracker/#datatracker-home

[8] https://www.military.com/daily-news/2021/06/30/dod-confirms-rare-heart-inflammation-cases-linked-covid-19-vaccines.html

[9] https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/burden.html (this CDC report adjusts the reporting based on asymptomatic cases which never get reported to government agencies.)

[10] https://www.dph.illinois.gov/covid19/covid19-statistics

[11] https://www.dph.illinois.gov/covid19/covid19-statistics

children, financial hardship or ruin, and harms to physical, mental and emotional health.

59.     Several courts in Illinois and throughout the nation have already issued injunctive relief, including temporary restraining orders, to plaintiffs who are threatened with adverse employment consequences because of their religious or conscience-based objections to COVID-19 vaccines: *Doster v. Kendall*, Case No. 2021 CV 0084 (US Dist. Court, Southern District of Ohio) (preliminary injunction entered July 27, 2022); *Jane Doe et. al. v. Northshore University Health System*, Case No. 2021 CV 05683 (US Dist. Court, Northern District of Illinois) (granting TRO under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and the Illinois Health Care Right of Conscience Act); *Velvet Darnell et. al. v. Quincy Physicians and Surgeons Clinic, S.C. and Blessing Corporate Services, Inc.*, Case No. 2021 MR 193 (18th Judicial Cir. Adams County, IL October 1, 2021) (granting TRO under Illinois Health Care Right of Conscience Act, and enjoining healthcare providers from taking adverse action against healthcare employees declining COVID-19 vaccination on religious and conscience grounds); *David Sambrano et. al. v. United Airlines, Inc.*, Case No. 4:21-01074-P (N.D. Texas. Oct. 18, 2021); *Dr. A. v. Hochul*, No. 1:21-CV-1009-DNH-ML, 2021 WL 4734404, *9 (N.D.N.Y. Sept. 14, 2021) (granting preliminary injunction against enforcement of New York's COVID-19 vaccine mandate on healthcare workers for failure to grant religious exemptions and noting that "Title VII does not demand mere neutrality with regard to religious practices . . . rather, it gives them favored treatment.' Thus, under certain circumstances, Title VII 'requires otherwise-neutral policies to give way to the need for an accommodation." (emphasis added)); *We The Patriots USA, Inc. v. v. Hochul*, No. 21-2179, dkt. 65 (2d Cir. Sept. 30, 2021) (issuing an injunction pending appeal against enforcement of New York's COVID-19 Vaccine Mandate for its failure to allow for religious accommodations); *Dahl v. Bd. of Trustees of W. Michigan Univ.*, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7,

2021)(allowing the preliminary injunction to stand against a University's failure to accommodate student athletes with sincerely held religious objections to the COVID-19 vaccine mandate and noting that "The University put plaintiffs to the choice: get vaccinated or stop fully participating in intercollegiate sports. . . . By conditioning the privilege of playing sports on plaintiffs' willingness to abandon their sincere religious beliefs, the University burdened their free exercise rights." (emphasis added)); *Magliulo v. Edward Via College of Osteopathic Medicine*, No. 3:21-CV-2304, 2021 WL 36799227 (W.D. La. Aug. 17, 2021) (granting temporary restraining order against a medical school for the school's failure to grant religious exemptions when reasonable accommodations were available (such as masking, testing, etc.) and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body); *Bilyeu v. UT-Battelle, LLC*, No. 3:21-cv-352, 2021 WL 4859932, * (E.D. Tenn. Oct. 15, 2021) (granting TRO enjoining healthcare employers "from terminating or placing on indefinite unpaid leave any employee who has received a religious or medical accommodation").

60.      On or about November 8, 2021, the Illinois General Assembly enacted Public Act 102-667, Section 5 (effective June 1, 2022) adding 745 ILCS 70/13.5 to the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 et seq ("the Amendment"). The Amendment provides,

> It is not a violation of this Act for any person or public official, or for any public or private association, agency, corporation, entity, institution, or employer, to take any measures or impose any requirements, including, but not limited to, any measures or requirements that involve provision of services by a physician or health care personnel, intended to prevent contraction or transmission of COVID-19 or any pathogens that result in COVID-19 or any of its subsequent iterations. It is not a violation of this Act to enforce such measures or requirements. This Section is a declaration of existing law and shall not be construed as a new enactment. Accordingly, this Section shall apply to all actions commenced or pending on or after the effective date of this amendatory Act of the 102nd General Assembly. Nothing in this Section is intended to affect any right or remedy under federal law. (Source: P.A. 102-667, eff. 6-1-22.)

12

A copy of the Healthcare Right of Conscience Act ("HRCA") as amended by Public Act 102-667, is attached here as Exhibit L.

61.     The Amendment came into being only after several Illinois state courts had extended protection from Covid-19 vaccination or testing mandates to litigants under the original wording of the HRCA. *See, Rojas*, 443 Ill. Dec. 212; *Darnell*, 2021 MR 193, Adams County, September 30, 2021 Decision and Order; 745 ILCS 70/13.5.

62.     Governor Pritzker stated specifically that he sought the amendment as a direct result of his dislike for the ongoing lawsuits challenging his authority to mandate Covid-19 vaccination or testing via executive order.[12]

63.     Defendants have acknowledged, as early as September 2021, that they were aware their actions attempting to require individuals such as the Plaintiff to either vaccinate or test for Covid-19 in order to maintain employment, were a violation of HRCA. *See*, Exhibit M, September 2021 email from Jeffrey Aranowski of Illinois State Board of Education ("…given the language of the Act we believe HCRCA objections are likely valid.")

64.     The actions giving rise to Plaintiffs' claims began prior to the enactment or effective date of Public Act 102-667.

65.     The HRCA was intended to protect the religious conscience rights of individuals like the Plaintiff, but the Amendment added by Public Act 102-667 strips the HRCA of that protection.

66.     Defendants have not asserted that Public Act 102-667 repeals any part of the HRCA. To the contrary, Defendants have repeatedly asserted, and the face of Public Act 102-667

---

[12] *https://www.thecentersquare.com/illinois/pritzker-calls-concerns-about-changes-to-right-of-conscience-act-facebook-fakery/article_97471822-377b-11ec-bf66-9febd03329d0.html?fbclid=IwAR1CbWOJO2nFe1fpE9t1rsIu1r4F2Po_2GFdwXXy7qFE0raGePZuf3pcS_w*

states, that the Amendment "is a declaration of existing law."

67.     Defendants have made the ludicrous assertion, furthermore, that the Amendment added by Public Act 102-667 states the meaning of the HRCA "as it always was."

68.     Defendants have asserted, in other words, that the original drafters of the HRCA *always* intended to prevent its protections from extending to, specifically, Covid-19.

69.     The Amendment violates the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq*., because it violates the religious convictions of individuals including the Plaintiff without serving a compelling government interest in a least restrictive way, and it treats some religious beliefs more favorably than others.

70.     For the same reason, the Amendment violates the protection of the free exercise of religion of the First Amendment of the United States Constitution and Article I, Section 3 of the Illinois Constitution.

71.     The Amendment further violates the equal protection rights of the Plaintiff under the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Illinois Constitution, by treating similarly situated individuals differently based upon their religious beliefs.

72.     The Illinois Legislature in carrying out its constitutional duty passed the Department of Public Health Act vesting the IDPH with "supreme authority" in relation to areas of testing, vaccinations, and quarantine.  A copy of the Department of Public Health Act ("PHA") and Illinois Administrative Code is attached hereto as Exhibit N.

73.     Section 690 of Title 77 of the Illinois Administrative Code has been in existence since 1970 and all State actors and citizens have operated under those set standards despite contagious diseases such as MERS, Swine Flu, and Ebola.

74.     Pursuant to said statute and administrative code, the IDPH has explicitly delegated its authority to order testing and/or vaccinations to certified local health departments.  Neither the PHA nor the Illinois Administrative Code permit the Governor or any other State agency to implement broad public health measures through implementation of Executive Orders that impede on the explicit due process rights set forth in the PHA.

75.     In the passing of the PHA, the Illinois Legislature made clear the IDPH's promulgated administrative rules regarding procedural safeguards must be followed when mandating citizens of the State of Illinois vaccinate and/or test to control the spread of contagious disease.

76.     The Governor now attempts to indicate he has the ability to make all decisions regarding an emergency by simply rendering Illinois in a "state of emergency" under the Illinois Emergency Management Agency Act ("IEMAA").  In making such an overreaching proclamation, the Governor fails to recognize and acknowledge the Legislature granted the IDPH the "supreme authority" in matters of testing, vaccinations, and quarantine.  Moreover, subsection (f) of the IEMAA includes mandatory language of "shall", thus requiring the Governor to coordinate with the IDPH with respect to responding to public health emergencies.  A copy of the IEMAA is attached hereto as Exhibit O.

77.     Never in the history of Illinois has the Governor, or other administrative agency, attempted to adopt such an abrasive public health regulation addressing a threat that is frankly unrelated to the workplace.  As the Supreme Court indicated, "this lack of historical precedent, coupled with the breadth of authority the Secretary now claims, is a telling indication that the mandate extends beyond the agency's legitimate reach." *National Federation of Independent Business, et al. v. Department of Labor, Occupational Safety and Health Administration, Et Al.,*

595 U.S. 1, 7 (2022); citing *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 505 (2010).

78.    The United States Supreme Court, moreover, has recognized that the issue of requiring vaccination and/or testing for any particular infectious disease is a matter of public health, not of workplace safety. *National Federation of Independent Business, et al. v. Department of Labor, Occupational Safety and Health Administration, Et Al.,* 595 U.S. 1, 7 (2022).

79.    Plaintiffs seek declaratory relief under 28 U.S.C. §§2201-02, the First and Fourteenth Amendments of the United States Constitution, the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 et seq., the Illinois Healthcare Right of Conscience Act, 745 ILCS 701 et seq., Article I §§ 3 & 4 of the Illinois Constitution, and the Declaratory Judgment Act, 735 ILCS 5/2-701.

80.    Plaintiff seeks attorney's fees and costs under 42 U.S.C. § 1988, the Illinois Religious Freedom Restoration Act, 775 ILCS 35/20, the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 et seq., and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5.

## JURISDICTION AND VENUE

81.    This action arises under the laws of the United States, specifically 21 U.S.C. §360bbb-3 and 42 U.S.C. § 2000e, *et seq*, the First and Fourteenth Amendments to the United States Constitution, the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 et seq., and Article I, §§ 2, 3, & 4 of the Illinois Constitution.

82.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343, and 1367.

83.    This Court has jurisdiction over this action because Plaintiffs are seeking

protection of their individual due process, religious freedom and other fundamental rights. *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728 (1981).

84.      The Plaintiff have filed claims with the Equal Employment Opportunity Commission and received their Right to Sue letters within the past 90 days.

85.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this district.

86.      This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

87.      This Court is authorized to grant the Plaintiffs' prayer for relief regarding damages, costs, and attorney's fees, pursuant to Rule 54 of the Federal Rules of Civil Procedure and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981a and §2000e, *et seq.*, the Illinois Religious Freedom Restoration Act, 775 ILCS 35/20, the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 et seq., and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5.


## RELEVANT LEGAL AUTHORITY

88.      The State has "important and legitimate interests in . . . protecting the health of the pregnant woman and in protecting the potentiality of human life." *June Medical Services L.L.C. v. Russo*, 591 U.S. ___ (2020) (Roberts, J., concurring) (citing *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U.S. 833, 875-876 (1992) (plurality opinion)

89.      The State has an interest in protecting the life of the unborn. *Casey*, 505 U.S. at 873.

90.     As a matter of public policy, "No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891).

91.     As a matter of public policy, the right to bodily self-determination is recognized as constitutionally protected by the right to privacy. See, *Eisenstat v. Baird*, 405 U.S. 438, 453 (1972). See also, *Olmstead v. U.S.*, 277 US 438, 478 (1928) (Brandeis, J., dissenting) (the right to have one's private life protected from government interference is described as "the right to be let alone-the most comprehensive of rights and the right most valued by civilized man.")

92.     "It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a).

93.     "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate." 42 U.S.C. §2000e-5(g).

94. "[S]ubject to the provisions of this section, the Secretary (of the Department of Health and Human Services) may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use." 21 U.S.C. §360bbb-3(a)(1) (the "Emergency Use Authorization Statute," or "EUA Statute.")

95. As part of the explicit statutory conditions for an Emergency Use Authorization under the Emergency Use Authorization statute, the statute mandates that all individuals to whom the product approved for Emergency Use may be administered, be given the option to accept or refuse administration of the product. Specifically:

96. "With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall for a person who carries out an activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following . . . Appropriate conditions designed to ensure that individuals to whom the product is administered are informed — (I) that the Secretary has authorized the emergency us of the product; (II) of the significant known potential benefits and risks of such use, and of the extent to which such benefits are unknown; and (III) of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks. 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III).

97. The primary policy furthered by the Illinois Healthcare Right of Conscience Act, amended by Public Act 102-667, is "to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept, or who are engaged in, the delivery of, arrangement for,

or payment of health care services and medical care …" 745 ILCS 70/2.

98.    Under the HRCA's underlying definition, "health care" is defined as "any phase of patient care, including but not limited to, testing, diagnosis, prognosis, ancillary research, instructions, family planning, counselling, referrals, or any other advice in connection with the use or procurement of contraceptives and sterilization or abortion procedures, medication, or surgery or other care or treatment rendered by a physician or physicians, nurses, paraprofessionals or health care facility, intended for the physical, emotional and mental wellbeing of persons." 745 ILCS 70/3.

99.    "Conscience" is defined in the HRCA as "a sincerely held set of moral convictions arising from belief in and relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths." *Id.*

100.    The HRCA as written is unambiguous, and unequivocally applies to protect individuals such as the Plaintiff from unlawful vaccination or testing mandates, or any forced participation in medical procedures which violate her sincerely held religious beliefs. 745 ILCS 70/5, in particular, provides,

> Sec. 5. Discrimination. It shall be unlawful for **any** person, public or private institution, or public official to discriminate against **any** person in **any** manner, including but not limited to, licensing, hiring, promotion, transfer, staff appointment, hospital, managed care entity, or **any** other privileges, because of such person's conscientious refusal to receive, obtain, accept, perform, assist, counsel, suggest, recommend, refer or participate in **any** way in **any** particular form of health care services contrary to his or her conscience.

745 ILCS 70/5 (Source: P.A. 90-246, eff. 1-1-98.) (Emphasis added.)

101.    When Public Act 102-667 was enacted on or about November 8, 2021, it added a new Section 13.5 to the HRCA. The new Section 13.5 provides,

> It is not a violation of this Act for any person or public official, or for

any public or private association, agency, corporation, entity, institution, or employer, to take any measures or impose any requirements, including, but not limited to, any measures or requirements that involve provision of services by a physician or health care personnel, intended to prevent contraction or transmission of COVID-19 or any pathogens that result in COVID-19 or any of its subsequent iterations. It is not a violation of this Act to enforce such measures or requirements. This Section is a declaration of existing law and shall not be construed as a new enactment. Accordingly, this Section shall apply to all actions commenced or pending on or after the effective date of this amendatory Act of the 102nd General Assembly. Nothing in this Section is intended to affect any right or remedy under federal law. (Source: P.A. 102-667, eff. 6-1-22.)

102.    The Amendment purports to "declare" that the law means and always meant to exclude Covid-19 from its protection of individual rights. 745 ILCS 70/13.5.

103.    Defendants have not asserted that Public Act 102-667 repeals any part of the HRCA. To the contrary, Defendants have repeatedly asserted, and the face of Public 102-667 states, that the Amendment "is a declaration of existing law."

104.    The assertion is that lawmakers in the 1970s and 1990s somehow wrote HRCA fully intending to exempt Covid-19, a virus which was then unheard-of, from its provisions. It also begs the question why, if lawmakers in the 1970s and 1990s were prescient enough to exempt Covid-19 from the requirements of HRCA, they did not see fit to exclude ebola, H1N1, measles, smallpox, or even influenza (for which a separate vaccine statute does actually exist – and which recognizes the exemption for religious objection within its provisions, see 210 ILCS 85/6).

105.    The Amendment contradicts the stated public policy of the HRCA which is to honor the sincerely held religious beliefs of every Illinois citizen. 745 ILCS 70/2. It conditions the conscience protection for Plaintiff's sincerely held religious conviction, found elsewhere in §§ 4, 5, 7, 8, 9, 10, and 11 of the HRCA, upon their compliance with any and all "measures and requirements" an employer might see fit to impose in the alleged attempt to combat, specifically,

Covid-19 or any of its "subsequent iterations." PA 102-667, Section 5.

106.    Plaintiffs have suffered the loss of their constitutionally and statutorily guaranteed rights of free exercise of religion and equal protection, because of the Defendants' actions, including Public Act 102-667.

107.    Additionally, Plaintiffs have suffered a chilling effect on the exercise of their rights as a result of the Defendants' actions.

108.    The Amendment, and the enforcement of Defendants' Covid-19 vaccination or testing program, are actions taken under color of state law.

109.    Defendant's actions have imposed irreparable harm to the Plaintiffs' free exercise of religion.

110.    The Illinois Department of Public Health Act sets forth explicit due process procedures that State actors must follow when attempting to institute mandated vaccinations and/or testing.

111.    Pursuant to the Act, any person subject to testing under paragraph 2(d) shall be provided written notice from the IDPH that includes the following information:

      i.    that the individual <u>may refuse to consent</u> to physical examination, test, or collection of laboratory specimens; (ii) that if the individual consents to testing, the results of that testing specimens may subject the individual to isolation or quarantine pursuant to the provisions of subsection (c) of this Section; (iii) that if the individual refuses to consent to physical examination, tests, or collection of laboratory specimens and that refusal results in uncertainty regarding whether he or she has been exposed to or is infected with a dangerously contagious or infectious disease or otherwise poses a danger to the public's health, the individual may be subject to isolation or quarantine <u>pursuant to the provisions of subsection (c)</u> of this Section; and (iv) that if the individual refuses to consent to physical examinations, tests, or collection of laboratory specimens and becomes subject to isolation and quarantine as provided in this subsection (d), he or she shall have the right to counsel pursuant to the provisions of subsection (c) of this Section.

112.    Pursuant to the Act, any person that is subject to vaccination shall be provided written notice from the IDPH that includes the following:

> i.    that the individual may refuse to consent to vaccines, medications, or other treatments; (ii) that if the individual refuses to receive vaccines, medications, or other treatments, the individual may be subject to isolation or quarantine pursuant to the provisions of subsection (c) of this Section; and (iii) that if the individual refuses to receive vaccines, medications, or other treatments and becomes subject to isolation or quarantine as provided in this subsection (e), he or she shall have the <u>right to counsel pursuant</u> to the provisions of subsection (c) of this Section.

113.    That Department of Public Health Act further admonishes that the religious beliefs of individuals must be honored at all times in the administration of vaccinations.

114.    Governor Pritzker's authority relative to emergency authority is clearly spelled out in the provisions of the IEMAA.  The Executive Orders issued by Governor Pritzker lack any historical precedent despite numerous other pandemics that have faced this State since the implementation of the IDPHA.  The Executive Orders violate the mandated due process procedures set forth in the IDPHA that are afforded all citizens of the State of Illinois.

115.    Further, pursuant to the provisions of the IEMAA, Governor Pritzker is not provided independent authority to make decisions relative to public health related matters without coordination from the IDPH.

116.    It is telling that when the Illinois Legislature passed the Department of Public Health Act pursuant to its constitutional authority, they did not even grant the DPH with authority to mandate vaccinations on the general public without consent, but merely gave them authority to quarantine individuals that would not consent if appropriate promulgated procedures sets forth in subsection (c) could be satisfied.

117.    Such consent was clearly important in the passing of such legislation with the understanding a vaccination is not something that can be undone at the end of the day.

118.    The Defendants actions are imposing and will continue to impose irreparable harm to Plaintiff's due process rights unless they are declared illegal or unconstitutional.

## COUNT I
## DEFENDANTS' COVID-19 VACCINATION OR TESTING PROGRAM VIOLATES TITLE VII, 42 U.S.C. § 2000e, et seq.

119.    Plaintiffs restate and incorporate by reference the allegations of paragraphs 1-118 as if fully set forth herein.

120.    The Plaintiffs have a right to insist they not be compelled to be vaccinated or to submit to testing for Covid-19 unless the same be authorized by law.

121.    Defendants rely upon an executive order of the Governor as authority which compels them to require the Plaintiffs, and other employees of Defendant, to be vaccinated or subject themselves to invasive testing for Covid-19.

122.    Title VII of the Civil Rights Act of 1964 prohibits Defendants from discriminating against the Plaintiffs on the basis of their sincerely held religious beliefs.

123.    The Plaintiffs have sincerely held religious beliefs that preclude them from receiving a Covid-19 vaccine.

124.    Plaintiffs informed Defendants of those beliefs and requested a religious exemption and reasonable accommodations for the vaccine mandate.

125.    Nonetheless, the Defendants have, under color of law, adopted policies which mandate the Plaintiffs to become vaccinated or submit to invasive testing.

126.    Defendants have failed to provide the Plaintiffs with religious exemptions and reasonable accommodations, thereby discriminating against the Plaintiffs because of their religious beliefs.

127.    Defendants' failure to provide religious exemptions and accommodations has harmed and will continue to harm the Plaintiffs.

128.    Plaintiffs have filed charges with the EEOC complaining of these discriminatory actions and have received their Right to Sue letters within the past 90 days.

129.    An actual controversy exists between the parties in regard to the lawful authority of the Defendants to compel the Plaintiffs to submit to vaccination or testing for the COVID-19 to allegedly prevent the spread of an infectious disease.

130.    An immediate and definitive determination is necessary to clarify the rights and interests of all parties affected.

Wherefore, Plaintiffs, ROBERT HERCMANAS and KACEY HANSON respectfully pray for relief against Defendants as set forth in THEIR Prayer for Relief.


### COUNT II
### DEFENDANTS' COVID-19 VACCINATION OR TESTING PROGRAM VIOLATES THE EMERGENCY USE AUTHORIZATION ACT, 21 U.S.C. §360BBB-3, et seq.

131.    Plaintiffs restate and incorporate by reference the allegations of paragraphs 1-118 as if fully set forth herein.

132.    On information and belief, the existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine register in the millions, and anyone receiving any COVID-19 vaccine for the foreseeable future is guaranteed to receive the EUA-approved Pfizer-BioNTech COVID-19 Vaccine, not the fully approved COMIRNATY.

133.    There are no currently existing doses of COMIRNATY in the United States and it is not being manufactured for production or distribution in the United States at this time.

134.    In fact, the FDA Pfizer Letter plainly indicates that COMIRNATY is not available

in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older, there is no sufficient approved vaccine for distribution to the population." (Pfizer Letter at 6 n.12 (emphasis added).)

135.    Thus, the FDA has admitted and acknowledged that the current supply of the fully approved COMIRNATY is not even available for the population in the United States, and thus issued the continued EUA authorization for the Pfizer-BioNTech Covid-19 Vaccine. (Id.).

136.    Indeed, in order for the FDA to have even continued the EUA for the Pfizer-BioNTech Covid-19 Vaccine, it was required to find that there were no alternatives available for the Pfizer-BioNTech vaccine. (See Pfizer Letter at 6 ("There is no adequate, approved, and available alternative to the Pfizer-BioNTech COVID-19 Vaccine to prevent COVID-19." (Emphasis added).)

137.    Thus, the only currently available COVID-19 vaccines are subject solely to EUA approval and therefore cannot be mandated for use.

138.    The Emergency Use Authorization Fact Sheets for all three COVID-19 vaccines state that it is the individual's right to refuse administration of the vaccine.

139.    By imposing a Mandatory COVID-19 Vaccination Policy on Plaintiff and refusing to grant her requested religious exemption from such mandatory vaccination, Defendants are denying Plaintiff her right to accept or refuse administration of the three currently available COVID-19 vaccines, which are subject only to Emergency Use approval under the Emergency Use Authorization statute.

140.    Defendants are violating the provisions of the Emergency Use Authorization Statute.

141.    Defendants are denying Plaintiffs their statutory rights under the United States

Code and infringing upon the explicit protections outlined in the Emergency Use Authorization Statute.

142.    The vaccinations and testing mechanisms have been authorized for just one year.

143.    The long-term effects for this vaccine are unknown.

144.    Pfizer has acknowledged over 1200 known side effects from its "investigational Covid-19 vaccine."

145.    An actual controversy exists between the parties in regard to the lawful authority of the Defendants to compel the Plaintiffs to submit to health care services which are subject only to Emergency Use approval, in violation of their moral conscience and sincerely held beliefs. .

146.    An immediate and definitive determination is necessary to clarify the rights and interests of all parties affected.

147.    Defendants' Policy has caused, is causing, and will continue to cause Plaintiffs immediate and irreparable harm by denying her their statutory right to accept or refuse administration of the three COVID-19 vaccines, which are subject only to Emergency Use under the Emergency Use Authorization statute.

148.    Plaintiffs have no adequate remedy at law to prevent the ongoing deprivation of their statutory rights under the Emergency Use Authorization statute to be given the right to accept or refuse administration of the COVID-19 vaccines, which are subject only to Emergency Use authorization under the Emergency Use Authorization statute.

Wherefore, Plaintiffs, ROBERT HERCMANAS and KACEY HANSON, respectfully pray for relief against Defendants as set forth in their Prayer for Relief.

## COUNT III
## VIOLATION OF THE ILLINOIS RELIGIOUS FREEDOM RESTORATION ACT
## 775 ILCS 35/1, et seq.

149.    Plaintiffs restate and incorporate by reference the allegations of paragraphs 1-118 as if fully set forth herein.

150.    Section 15 of the Illinois Religious Freedom Restoration Act of 1998, 775 ILCS 35/15 provides that "Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest."

151.    The HRCA, 745 ILCS 70/1 *et seq*., as written is unambiguous, and unequivocally applies to protect individuals such as the Plaintiff from unlawful vaccination or testing mandates, or any forced participation in medical procedures which violate her sincerely held religious beliefs.

152.    When Public Act 102-667 was enacted on or about November 8, 2021, it added a new Section 13.5 to the HRCA.

153.    The Amendment purports to "declare" that the law means and always meant to exclude Covid-19 from its protection of individual rights. 745 ILCS 70/13.5.

154.    The Amendment contradicts the stated public policy of the HRCA which is to honor the sincerely held religious beliefs of every Illinois citizen. 745 ILCS 70/2. It conditions the conscience protection for the Plaintiff's sincerely held religious conviction, found elsewhere in §§ 4, 5, 7, 8, 9, 10, and 11 of the HRCA, upon their compliance with any and all "measures and requirements" an employer might see fit to impose in the alleged attempt to combat, specifically, Covid-19 or any of its "subsequent iterations." PA 102-667, Section 5.

155.    The Amendment burdens the religious exercise of the Plaintiffs by forcing them to

28

choose between, on the one hand, adhering to their sincerely held religious beliefs and violating Defendants' Covid-19 vaccination or testing policy and suffer adverse employment actions, financial harm, and potential physical harm, or, on the other hand, violate their religious beliefs and conscience.

156.    The Amendment, Defendants and the State have no compelling governmental interest to require Plaintiffs to violate their conscientious beliefs.

157.    Such compulsion by the Amendment, the Defendants, and the State, is not a least restrictive means of furthering a compelling government interest when Illinois law already provides a settled means for mitigating the spread of infectious disease which accounts for the protection of sincerely held religious convictions, and when the available vaccines for Covid-19 are merely Emergency Use Authorized and have unknown side effects.

158.    The HRCA, on the other hand, prior to the November 2021 amendment, provides an important governmental benefit to the Plaintiffs by protecting them from liability and governmental retaliation for abiding by her religious convictions.

159.    The Amendment conditions those benefits upon the forfeiture of religious beliefs by the Plaintiffs.

160.    Moreover, the Amendment discriminates against individuals like the Plaintiffs because of their religious convictions and conscience. Individuals whose religious convictions do not prohibit participation in Covid-19 vaccination or testing are treated more favorably by the Amendment.

161.    There is no compelling interest sufficient to justify this substantial burden to the Plaintiffs on their religious beliefs.

162.    Requiring Plaintiffs to participate in Covid-19 vaccination or testing at the direction

of their employers is not the least restrictive means of furthering any interest the State has.

Wherefore, Plaintiffs, ROBERT HERCMANAS and KACEY HANSON, respectfully pray for relief against Defendants as set forth in their Prayer for Relief.


### COUNT IV
### VIOLATION OF THE FREE EXERCISE OF RELIGION
### PROTECTED BY THE FIRST AMENDMENT OF THE U.S. CONSTITUTION
### AND ARTICLE I, SECTION 3 OF THE ILLINOIS CONSTITUTION

163.    Plaintiffs restate and incorporate by reference the allegations of paragraphs 1-118 as if fully set forth herein.

164.    The HRC Act provides an important governmental benefit to the Plaintiffs by protecting them from liability and governmental retaliation for abiding by their religious convictions.

165.    The Amendment to the HRCA conditions that benefit upon the forfeiture of Plaintiffs' religious beliefs at the sole direction of an employer.

166.    Moreover, the HRCA as now amended discriminates against individuals like the Plaintiffs whose religious convictions require them not to participate in Covid-19 vaccination and testing.

167.    Individuals whose religious convictions do not prohibit participating in Covid-19 vaccination and testing are treated more favorably by the Amendment.

168.    The Amendment imposes a burden on the Plaintiffs and their exercise of religious beliefs by forcing them to participate in Covid-19 vaccination or testing at the sole direction of an employer, the Defendants or the State.

169.    The burden placed on the Plaintiffs for their religious beliefs is a substantial burden.

170.    The Amendment is not religiously neutral or generally applicable.

171.    There is no compelling interest, or even a rational interest, sufficient to justify the Amendment's burden on the Plaintiffs or their religious beliefs.

172.    The Amendment's burden on the Plaintiffs' religious exercise is not the least restrictive means of furthering the government's alleged interests.

Wherefore, Plaintiff, ROBERT HERCMANAS and KACEY HANSON, respectfully pray for relief against Defendants as set forth in their Prayer for Relief.


**COUNT V**
**VIOLATION OF THE EQUAL PROTECTION CLAUSE**
**OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION**
**AND ART. I, § 2 OF THE ILLINOIS CONSTITUTION**

173.    Plaintiffs restate and incorporate by reference the allegations of paragraphs 1-118 as if fully set forth herein.

174.    The Act as now amended treats similarly situated individuals and organizations differently based upon their religious convictions.

175.    Individuals like the Plaintiffs whose religious convictions require them to not participate in Covid-19 vaccination and testing, cannot obtain protection of the Act without violating their convictions without facing adverse actions by the Defendant and irreparable hardship.

176.    Individuals who have no religious objection to Covid-19 vaccination and testing are protected by the Amendment and the Act without having to violate their convictions.

177.    Individuals whose religious convictions do not prohibit them from participating in Covid-19 vaccination and testing are treated more favorably by the Amendment.

178.    This differential treatment is based upon the fundamental right of freedom of

31

religion.

179.    There is no compelling interest sufficient to justify this differential treatment.

180.    Requiring Plaintiffs to submit to Covid-19 vaccination or testing at the sole direction of an employer, the Defendants or the State, is not the least restrictive means of furthering any interest the State has.

Wherefore, Plaintiff, ROBERT HERCMANAS and KACEY HANSON, respectfully pray for relief against Defendants as set forth in their Prayer for Relief.


## COUNT VI
## VIOLATION OF THE DUE PROCESS RIGHTS SET FORTH
## IN THE ILLINOIS DEPARTMENT OF PUBLIC HEALTH ACT

181.    Plaintiffs restate and incorporate by reference the allegations of paragraphs 1-118 as if fully set forth herein.

182.    The legislative procedural safeguards set forth in the Illinois Department of Public Health Act must be followed when mandating testing and vaccinations on people to control the spread of disease.

183.    Due process requires State actors to do the following: acquire consent; proceed to a court hearing; appointment of counsel if desired; and a lawful order of quarantine.  Associated with any such court order, the public health department must prove to this Court, clear and convincing evidence, the Plaintiffs were exposed to or may have been exposed to a contagious disease prior to being able to mandate any testing and/or vaccination on public citizens.

184.    Governor Pritzker through implementation of his Executive Orders attempted to strip Plaintiffs of all procedural due process safeguards set forth in the IDPHA.

185.    Governor Pritzker is not the governing body known as the Public Health Department, thus is not granted the statutory authority to mandate vaccinations and/or testing on public citizens without coordination from the health department.

186.    Should the County Health Department desire to compel Plaintiffs, or other individuals, to vaccinate and/or test, this can only be accomplished by following the procedural and substantive due process requirements set forth in 20 ILCS 2305/2, as well as 77 Ill. Admin. Code 690 *et seq.*

187.    Requiring Plaintiffs to participate in Covid-19 vaccination or testing at the direction of their employers in violation of State law is not the least restrictive means of furthering any State interest.

Wherefore, Plaintiffs, ROBERT HERCMANAS and KACEY HANSON, respectfully pray for relief against Defendants as set forth in their Prayer for Relief.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A.    That this Court render a Declaratory Judgment declaring that Defendants' Mandatory COVID-19 Vaccination Policy, both on its face and as applied by Defendants, is illegal and unlawful under the Emergency Use Authorization statute, 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) and Title VII, 42 U.S.C. § 2000e, et seq. and further declaring that:

   a.  by terminating the Plaintiffs from employment with Defendants or by threatening to so terminate or remove the Plaintiffs from their current position, Defendants have unlawfully denied the Plaintiffs their statutory rights under the Emergency Use Authorization statute to refuse administration of a product granted only Emergency

Use Authorization; and

b.  by terminating the Plaintiffs from employment with Defendants or by threatening to terminate or remove the Plaintiffs from their current position, Defendants have unlawfully discriminated against the Plaintiffs on account of their sincerely held religious objections to receiving or accepting one of the three COVID-19 vaccines in violation of Title VII.

B.  That the Court render a Declaratory Judgment, adjudging and declaring that Public Act 102-667, amending the Healthcare Right of Conscience Act:

a.  Violates Article I, Section 4 of the Illinois Constitution;

b.  Violates the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 et seq;

c.  Violates the Free Exercise of Religion Clause of the First Amendment of the United States Constitution;

d.  Violates Article I, Section 3 of the Illinois Constitution;

e.  Violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

f.  Violates Article I, Section 2 of the Illinois Constitution.

C.  That the Court render a Declaratory Judgment, adjudging and declaring that Governor Pritzker's Executive Orders violate the Illinois Department of Public Health Act, and further declare that the Executive Orders violate the Procedural Due Process rights afforded to the Plaintiffs.

D.  That this Court award the Plaintiffs actual damages in an amount to be proven at trial (but not less than $300,000 each, as provided by 42 U.S.C. §1981a(a) and (b)), including those for pain and suffering, that the Plaintiffs sustained as a result of Defendants' discriminatory,

unconscionable, and unlawful Mandatory COVID-19 Vaccination Policy.

E.      That this Court award the Plaintiffs actual and treble damages in an amount to be proven at trial (but not less than $2,500 per incident, as provided by 745 ILCS 70/1 et seq.), including those for pain and suffering, that the Plaintiffs sustained as a result of Defendants' discriminatory, unconscionable, and unlawful Mandatory COVID-19 Vaccination Policy.

F.      That this Court adjudge, decree, and declare the right and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment.

G.      That this Court retain jurisdiction over the matter for purposes of enforcing the Court's order.

H.      That this Court award the Plaintiffs the reasonable costs and expenses of this action, including reasonable attorneys' fees, as required by Title VII of the Civil Rights Act, Section 20 of the Illinois Religious Freedom Restoration Act, the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 et seq., and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5.

I.      That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

By:     /s/ Bethany D. Hager
        Bethany D. Hager
        IL Bar Reg. No. 6301697
        Law Office of Bethany D. Hager
        917 North Walnut Street
        Danville, IL 61832
        Telephone: 217-497-1009
        bhagerlaw@gmail.com

**VERIFICATION**

I, Robert Hercmanas, am over the age of eighteen years and am an adult individual named as Plaintiff in the above-captioned matter. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Illinois, that the foregoing statements are true and correct to the best of my knowledge.

Date: November 25, 2022          By:          /s/ Robert Hercmanas
                                                          ROBERT HERCMANAS

## VERIFICATION

I, Kacey Hanson, am over the age of eighteen years and am an adult individual named as Plaintiff in the above-captioned matter. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Illinois, that the foregoing statements are true and correct to the best of my knowledge.

Date: November 25, 2022            By:            /s/ Kacey Hanson
                                               KACEY HANSON